UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :
                         Plaintiff       :
v.                                       :      13 Cr. 242 (SAS)
                                         :
                                         :
ZOA BRIGGS,                              :
                                         :
                         Defendant.      :
------------------------------------x

**SENTENCING MEMORANDUM AND LETTERS
SUBMITTED ON BEHALF OF ZOA BRIGGS**

We represent Zoa Briggs pursuant to the Criminal Justice Act and respectfully submit this memorandum on his behalf. Mr. Briggs is scheduled to be sentenced before the Court on September 16, 2014 at 4:30 p.m. Mr. Briggs pleaded guilty, on June 6, 2014, to a one-count information alleging conspiracy to distribute and possess with the intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). The applicable advisory Sentencing Guidelines offense level is 21. Presentence Investigation Report ("PSR") ¶104. The Plea Agreement calculates that Mr. Briggs falls into Criminal History Category III, which yields an advisory Guidelines range of 46 to 57 months. The Plea Agreement further provides that, pursuant to the current policy of the Department of Justice, a two-level downward variance is generally warranted from the offense level specified in Section 2D1.1(c) of the November 1, 2013 version of the Guidelines manual and that the parties agree the defendant should be sentenced as though the applicable Guidelines range is 37 to 46 months' imprisonment.[1] The Probation Office calculates that Mr. Briggs falls into Criminal History Category IV and that, given his offense level of 21, his advisory Guidelines range is 57 to 71

---

[1] The PSR incorrectly states that the Plea Agreement reflects an agreement by the parties that Mr. Briggs should be sentenced as though the applicable range is 46 to 57 months' imprisonment. *See* PSR ¶ 4(C).

months' imprisonment. PSR ¶¶ 72, 104. Applying the two-level downward variance pursuant to current DOJ policy to the Guidelines range calculated by the Probation Office would yield an applicable Guidelines range of 46 to 57 months.

For the reasons outlined below we respectfully submit that the Court should apply the advisory Guidelines calculation set forth in the Plea Agreement, which yields an advisory Guidelines range (after accounting for the two-level variance pursuant to DOJ policy) of 37 to 46 months' imprisonment. Furthermore, we respectfully request that the Court impose a non-Guidelines sentence below the advisory range of 37 to 46 months. Mr. Briggs is arguably the least culpable defendant in this case. His offense conduct was sporadic and non-violent. He is not charged with distributing any heroin, the principal narcotic distributed by the Briggs Avenue organization, *see* PSR ¶ 8, and the drug weight attributable to him is the lowest of the defendants who have pleaded guilty to date. Additionally, Mr. Briggs did not reap substantial profits from the offense. Furthermore, while his criminal history is extensive, it consists entirely of misdemeanor offenses. Given these circumstances, and in order to avoid an unwarranted disparity between Mr. Briggs' sentence and the sentences of other co-defendants in this case who received non-Guidelines sentences, we respectfully request that the Court impose a non-Guidelines sentence of time served, or, alternatively, a sentence substantially below 37 months.[2]

The following supporting materials are attached to this memorandum:

Exhibit A:   Letter from Regina Barton to Your Honor
Exhibit B:   Letter from E.F. (redacted per Fed. R. Crim. P. 49.1(a)(3)) to Your Honor
Exhibit C:   Letter from Kelvin Ford to Your Honor
Exhibit D:   Letter from Jerome Ford to Your Honor
Exhibit E:   Letter from Melvin Ford to Your Honor

---

[2] Mr. Briggs has been in custody for approximately 17 months, since his arrest on April 4, 2013.

Exhibit F: Letter from E.G. (redacted per Fed. R. Crim. P. 49.1(a)(3)) to Your Honor
Exhibit G: Letter from Luella Conley to Your Honor
Exhibit H: Letter from Darryl Briggs to Your Honor
Exhibit I: Letter from Charlie Ford, Sr. to Your Honor
Exhibit J: Letter from Priscilla Ford to Your Honor
Exhibit K: Letter from Marcus Warren to Your Honor
Exhibit L: Letter from Ebraham Kubully to Your Honor
Exhibit M: Letter from Joseph Kendall Briggs to Your Honor
Exhibit N: Letter from Zoa Briggs to Your Honor

## I. STATEMENT OF FACTS

### A. Personal Background

#### 1. Mr. Briggs' Childhood

Mr. Briggs, now 32 years old, was born in Brooklyn, New York, the oldest child of Zoa Spears and Priscilla Ford. Shortly after his brother Joseph was born in 1985 his parents separated and Mr. Briggs had no other substantial contact with his father. His mother later married Charlie Ford, with whom she had two other children, Jerome (now age 19) and E.F. (now age 12). Mr. Briggs grew close to Mr. Ford and thought of him as his father. Mr. Briggs has another half-brother, Darryl Briggs, with whom he currently has little contact.

#### 2. Education And Employment History

Mr. Briggs attended high school at the Ives School in Lincolndale, New York, until withdrawing in tenth grade. He is currently studying for the GED exam.

During his teenage years, Mr. Briggs held several jobs in his Brooklyn neighborhood. He worked at a local pizzeria between the ages of approximately twelve and eighteen. He initially delivered pizzas, and, after earning his employer's trust, began to make pizzas and tend the cash register. During this time he also bagged groceries and stocked shelves at the neighborhood grocery store and delivered flowers for a local florist.

When he was approximately nineteen years old, Mr. Briggs began working with his stepfather at a catering business on Long Island, where he traveled to different event sites in the New York metropolitan area. After spending approximately three years in the catering industry, Mr. Briggs worked on a security team with the Mac Roberts Protective Agency helping to safeguard property at Piers 92 and 94 and the Javits Center. He later worked for Peerless Importers in their warehouse.

3. Substance Abuse

Mr. Briggs has a history of substance abuse. He first began using alcohol and marijuana at age 14 and used marijuana daily until his arrest in 2013. His previous attempts at rehabilitation were unsuccessful, in part, due to his youth and lack of maturity. Mr. Briggs now appreciates the substantial benefits that can result from successful completion of a drug rehabilitation program and is eager to enroll in such a program. Mr. Briggs has made attempts to participate in a drug rehabilitation program at the MCC but was informed there is a long wait.

4. Criminal History

Mr. Briggs' criminal history, although lengthy, consists entirely of non-violent misdemeanor offenses.

5. Mr. Briggs' Family Ties And Potential For Rehabilitation

Mr. Briggs maintains a close relationship with his family, as reflected by the sentiment of the many letters submitted on his behalf. He is close with his parents, siblings, and two young children, E.G. (age 8) and I.J. (age 3). Although Mr. Briggs does not live with his children, he is actively involved in their lives. E.G., whose mother passed away this year, has lived with a foster family for the past three years. Until his arrest last year Mr. Briggs visited with E.G. each

week and maintained a good relationship with his foster parents. Regina Barton, E.G.'s caregiver and foster parent, writes:

> I have always known Zoa to be [a] kind, giving, and a loving person. He has a strong family[-]oriented background. . . . Zoa['s] life is undoubtedly his son, E.G. He would do anything for him and I know he can and will be a great influence on his life.

Ex. A (Regina Barton Letter).

E.G., who has visited Mr. Briggs in prison on several occasions, writes:

> If my dad is not with me it will make me very sad. I am eight year[s] old and it will be hard to visit my dad far away [because] I am [too] little. My dad is a big part of my life. My mommy went to heaven and I need my dad. Please let him come home to me.

Ex. F (E.G. Letter).

Mr. Briggs is also close to his youngest son, I.J. Mr. Briggs lived with I.J. for the first year of his life before Mr. Briggs and I.J.'s mother separated. Following the separation, Mr. Briggs continued to spend time with I.J. on a weekly basis. As Mr. Briggs's brother, Joseph, writes:

> Zoa is responsible, reliable, consistent, trusting, and hardworking. I have observed his parenting skills. He will do all in his power and resources to provide for his sons. When we were young and fatherless, he always made time to hear my feelings. Zoa is a great brother. I strongly know that Zoa can move past this mistake. His children need their father. Zoa is one of my role models. He encouraged me to finish school and go to college. I miss my brother.

Ex. M (Joseph Kendall Briggs Letter). Mr. Briggs is eager to resume spending time with his two young children.

Mr. Briggs also maintains close ties with his brothers E.F., Joseph and Jerome, his uncles Kelvin and Melvin, and his grandmother Luella Conley, all of whom emphasize Mr. Briggs' generosity and kindness. His youngest brother E.F. writes: "My brother Zoa is a generous

5

person. He would take me to the store and buy me anything I want." Ex. B (E.F. Letter). Marcus Warren, who ministers to a prison ministry, writes: "I have know[n] Zoa Briggs for a number of years now. I feel that he is a good person [because] he has shown incredible compassion to others. I feel that he has learned from his experience of incarceration." Ex. K (Marcus Warren Letter). Perhaps his brother Jerome puts it best when he says: "I have never known anyone else than [*sic*] Zoa to give so much and not expect anything in return." Ex. D (Jerome Ford Letter). The authenticity of this sentiment is made plain by Jerome's candid admission that, unlike his brother Zoa, Jerome himself is "the taking type." *Id.*

Obviously Mr. Briggs has made some poor choices in his life. To the extent his past conduct reflects, in part, the negative influences of certain friends and peers, Mr. Briggs will be able to start afresh once released from prison. His mother, Priscilla Ford, who now resides in a new neighborhood, away from where the offense conduct occurred, has offered to let Mr. Briggs live with her until he is able to find his own apartment. Ms. Ford is very close to her son, has visited him frequently at the MCC, and speaks with him by phone daily. She acknowledges that her son "has made some poor decisions" but urges the Court to give him another chance:

> Your Honor, I believe for a fact that Zoa is remorseful for things that he has done. I know that my son is a changed person. I need him in my life. I have a lot of health issues and Zoa has always been there to help me. I believe that my son has changed his life, [and] he just needs a chance to show it.

Ex. J (Priscilla Ford Letter). Additionally, her significant other, Ebraham Kubully, has promised to secure a job for Mr. Briggs at the Hot & Crusty outlet he manages in Manhattan. Mr. Briggs has also identified several employment agencies that provide job training and assistance in locating transitional and permanent job opportunities. He has begun to study for his G.E.D., which he plans to complete, and has set goals for himself

6

which include enrolling at Bronx Community College to improve his employment prospects.

### B. Offense Conduct And Acceptance Of Responsibility

Mr. Briggs pleaded guilty and has accepted responsibility for his conduct. Mr. Briggs' role in the charged offense was sporadic and insubstantial. His criminal history consists, mostly, of transit offenses, selling small quantities of counterfeit movies, and, intermittently, distributing very small quantities of drugs. He played a minor role in the charged conspiracy as a low-level retailer.

## II. SENTENCING CONSIDERATIONS

### A. Legal Framework

Under Title 18, United States Code, Section 3553, the Court is required to impose a sentence that is "sufficient, but not greater than necessary" to provide just punishment for the offense; afford adequate deterrence; protect the public from further crimes of the defendant; and to provide the defendant with any needed correctional treatment. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). In fashioning an appropriate sentence, the Court must consider the familiar statutory factors, which, in addition to the purposes of criminal sentencing summarized above, include the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the sentencing range called for by the United States Sentencing Guidelines ("USSG"), including whether there are grounds for departures, and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. §§ 3553(a)(1) - (7). The Court, however, is not bound by the Guidelines. *See United States* v. *Booker*, 543 U.S. 220 (2005).

B. <u>Guidelines Calculation</u>

Pursuant to Section 2D1.1(c)(8) of the Guidelines, the defendant's base offense level is 24 because the offense involved at least 22.4 grams but less than 28 grams of cocaine base. PSR ¶ 35. A two-level downward adjustment applies, pursuant to Section 3E1.1(a) because of Mr. Briggs's guilty plea and acceptance of responsibility, and a further one-level downward adjustment applies under Section 3E1.1(b), because of Mr. Briggs's timely notice of his guilty plea. This calculation yields a total offense level of 21. PSR ¶¶ 44.

Based on his prior convictions, Mr. Briggs has a subtotal criminal history score of six. PSR ¶ 70. The PSR also attributes an additional two points to Mr. Briggs' criminal history computation pursuant to Section 4A1.1(d) on the basis that Mr. Briggs committed the instant offense while under a criminal justice sentence for Conditional Discharge. PSR ¶ 71. Accordingly, the PSR calculates Mr. Briggs' total criminal history score as eight, yielding a Criminal History Category of IV. PSR ¶ 72.

> C. A Sentence Below The 37 To 46 Month Range Set Forth In The Plea Agreement Is Sufficient, But Not Greater Than Necessary, To Satisfy The Purposes Of Sentencing
>
> 1. The Court Should Proceed At Sentencing As If The Applicable Guidelines Range Is The 37 To 46 Month Range Set Forth In The Plea Agreement

We do not challenge the computation of Mr. Briggs' Criminal History Category under the Plea Agreement (including the four-point enhancement he received under Section 4A1.1(c)) nor do we move for a downward departure from the applicable Guidelines range set forth in the Plea Agreement. However, we submit that because the offenses that gave rise to Mr. Briggs' prior sentences of conditional discharge are either expressly excluded under §4A1.2(c)(1), or similar in severity to such excluded offenses, and would not likely themselves result in an incarceratory

sentence, it would be more equitable to sentence Mr. Briggs as if his criminal history score were not increased by two points under Section 4A1.1(d).

Section 4A1.1(d) provides, in relevant part, that two points are to be added if the defendant "committed the instant offense while under any criminal justice sentence, including probation . . . ." The application notes explain that the term "criminal justice sentence" means "a sentence countable under §4A1.2 . . . having a custodial or supervisory component, although active supervision is not required for this subsection to apply." USSG §4A1.1, App. Note 4. Despite the fact that neither §4A1.1(d) nor §4A1.2 expressly refer to a "conditional discharge," the Second Circuit has held that the term is generally synonymous with "probation" and may qualify as a "criminal justice sentence" under the Sentencing Guidelines, even if unsupervised. *See, e.g., United States v. Ramirez*, 421 F.3d 159, 165-66 (2d Cir. 2005); *see also* USSG §4A1.1, App. Note 4. However, the Second Circuit has also indicated that the analysis of whether a sentence of conditional discharge qualifies as a criminal justice sentence turns upon whether there is a "custodial or supervisory component" to the sentence. For example, where a sentence of conditional discharge requires only the performance of community service it "lacks any 'custodial or supervisory component'" akin to the custodial component that may attend a sentence of conditional discharge under different circumstances. *United States v. Sanders*, 205 F.3d 549, 552, n.8 (2d Cir. 2000). Thus, unlike probationary sentences, which are expressly referenced as among the criminal justice sentences that would give rise to a two-point enhancement under Section 4A1.1(d), the Second Circuit has suggested that conditional discharge sentences, which are not expressly listed as criminal justice sentences under Section 4A1.1(d), may not so qualify under certain circumstances.

Furthermore, pursuant to Section 4A1.2(c)(1), certain listed misdemeanor offenses ("Listed Offenses") for which a sentence of probation of one year or less is imposed are *not* counted as "criminal justice sentences." *See* USSG § 4A1.2(c)(1)(A) (providing that, for such offenses, only probationary sentences "of more than one year" are to be counted). Because sentences of "conditional discharge" under New York law run for a period of up to "[o]ne year in the case of a misdemeanor," *see* N.Y. Penal L. § 65.05, but not *more* than one year, any sentence of conditional discharge that Briggs received for any Listed Offense (even assuming a sentence of "conditional discharge" is equivalent to a sentence of "probation") would not be counted under Section 4A1.2(c)(1) and thus would not result in a two-point enhancement under Section 4A1.1(d).

Three of Mr. Briggs' prior sentences of conditional discharge were imposed for the offense of resisting arrest, which is a Listed Offense under Section 4A1.2(c)(1). Accordingly, these prior sentences of conditional discharge do not count as "criminal justice sentences" and cannot form the basis for a two-point enhancement under Section 4A1.1(d). As the PSR notes, another of the conditional discharge sentences (July 20, 2005) pertains to marijuana distribution and is part of the instant offense and, consequently, cannot form the basis for an enhancement under Section 4A1.1(d). *See* § 4A1.2(a)(1).

The remaining sentences of conditional discharge relate to the failure to disclose the origin of a recording and possession of a forged instrument, which relate to Mr. Briggs' sales of counterfeit movies and transit offenses. We submit that it would be inequitable to apply a Guidelines range that includes a two-point enhancement under Section 4A1.1(d) due to any overlap between the instant conspiracy and these sentences of conditional discharge. The misdemeanor offense of selling counterfeit movies and committing transit offenses are similar in

10

severity to (or, arguably less severe than) the Listed Offense of passing checks with insufficient funds, for which sentences of conditional discharge would *not* give rise to a two-point increase under Section 4A1.1(d). Section 4A1.2(c) provides that, in addition to Listed Offenses, "offenses *similar* to" Listed Offenses are also to be excluded when such offenses result in probationary sentences of up to, but no more than, one year. USSG §4A1.2(c)(1) (emphasis added). In articulating the standard for assessing whether offenses are "similar" to Listed Offenses under Section 4A1.2(c)(1), the Second Circuit has instructed that "the goal of the inquiry is to determine whether the unlisted offense under scrutiny is categorically more serious than the Listed Offenses to which it is being compared." *United States v. Morales*, 239 F.3d 113, 118 (2d Cir. 2000). In conducting this inquiry, courts should employ a "common sense approach which relies on all possible factors of similarity, including [1] a comparison of punishments imposed for the listed and unlisted offenses, [2] the perceived seriousness of the offense as indicated by the level of punishment, [3] the elements of the offense, [4] the level of culpability involved, and [5] the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." *Id.*

Neither selling counterfeit movies nor fare-beating are categorically more serious than the Listed Offense of passing checks with insufficient funds. Indeed, the punishments, perceived seriousness, and level of culpability for theses offenses are similar. Moreover, attributing two additional criminal history points under Section 4A1.1(d) for this misdemeanor would be overly harsh as it would increase the applicable Guidelines range by more than a year's imprisonment due to the commission of offenses that do not ordinarily result in incarceration. Accordingly, we submit that Mr. Briggs should be sentenced as if his Criminal History Category did not reflect a two-point enhancement under Section 4A1.1(d) and as if he were in Criminal History Category

III, as reflected in the Plea Agreement. With a Criminal History Category of III and an offense level of 21, Mr. Briggs would face an advisory Guidelines range of 46 to 57. In light of the agreement between the parties that a two-level downward variance is generally warranted from the offense level specified in Section 2D1.1(c) of the November 1, 2013 version of the Guidelines manual, we would request that the Court apply the lower advisory Guidelines range of 37 to 46 months, as set forth in the Plea Agreement.

    2.    A Non-Guidelines Sentence Below 37 Months Is Sufficient But Not Greater Than Necessary To Achieve The Purposes Of Sentencing

Mr. Briggs is among the least culpable defendants in this case. His involvement in the instant offense was minor, sporadic, and non-violent. He operated, occasionally, as a low-level retailer, did not distribute any heroin (which was the principal narcotic distributed by the co-defendants), and did not reap substantial profits from his conduct. Indeed, over the last several years Mr. Briggs sold mostly small quantities of counterfeit DVD movies and only occasionally ventured into selling drugs. When he did sell drugs, he did so in very small quantities, at the retail level. This is reflected not only through the low drug weight attributed to him for the instant offense, but also in his criminal history, which (although concededly lengthy) consists entirely of misdemeanor offenses. We respectfully submit that a sentence falling within the range of 37 to 46 months' imprisonment would be unduly severe in light of Mr. Briggs' minor role in the conspiracy.

We would also note that several defendants who have been sentenced to date have received non-Guidelines sentences ranging from eleven to seventeen months below the low end of their respective Guidelines ranges. Defendant Christian Fabre, was "a manager who also stored large amounts of both crack cocaine and heroin" and was convicted of distributing at least

100 grams but less than 400 grams of heroin and at least 28 grams but less than 112 grams of cocaine, see Letter from AUSA Lenow (July 8, 2014) (ECF Dkt. No. 295 at 2). Fabre faced a Guidelines range of 41 to 51 months' imprisonment but received a below-Guidelines sentence of 30 months' imprisonment. Defendant Luis Guzman, who was in the middle tier of defendants, and functioned as a higher-level street seller, see Letter from AUSA Lenow (July 3, 2014) (ECF Dkt. No. 292 at 2), was (like Fabre) also convicted of distributing at least 100 grams but less than 400 grams of heroin and at least 28 grams but less than 112 grams of cocaine base and faced the same Guidelines range of 41 to 51 months' imprisonment. Guzman, whose participation was less significant than Fabre's, yet more extensive than that of Briggs, received a sentence of 24 months. Defendant Michael McDuffie, a street seller of both heroin and crack, see Letter from AUSA Lenow (July 18, 2014) (ECF Dkt. No. 322 at 2), who was convicted of selling at least 100 grams but less than 400 grams of heroin and at least 28 grams but less than 112 grams of cocaine base, faced a Guidelines range of 57 to 71 months but received a sentence of 42 months.

Because these defendants had greater involvement in the conspiracy than Briggs, and because they distributed more weight than Briggs, we respectfully submit that Briggs should receive a sentence that is lower than the 24 month sentence imposed upon defendant Guzman.

In addition, the Court should consider Mr. Briggs' history of substance abuse. As noted above, Mr. Briggs has used marijuana daily since he was a teenager and has undergone several treatment programs. Courts generally view a history of substance abuse as a mitigating factor that weighs in favor of a non-Guidelines sentence. *See, e.g., United States v. Collins*, 05 CR 1193-02, 2007 WL 1723718, at *5 (S.D.N.Y. June 7, 2007) (stating that defendant's drug abuse "likely contributed to [his] participation in the instant offense and may be ameliorated over the short-term through adequate treatment," and, therefore, "weighs in favor of imposing a non-

13

Guidelines sentence"); *United States v. Ray*, 375 F. Supp. 2d 832, 834 (S.D. Iowa 2005) (imposing below Guidelines sentence and stating that defendant's "mental health and substance abuse addictions . . . are [] factors the Court must consider in arriving at a sentence that is sufficient, but not greater than necessary to serve the needs of the sentence imposed").

Finally, Mr. Briggs has demonstrated the potential for rehabilitation. He has close relationships with his mother, who has visited him regularly during his time in custody. He is also quite close to his brothers and certain of his extended family members. And he is highly incentivized to resume spending time with his two young children with whom he has a close relationship. Mr. Briggs has not used drugs since his incarceration in April of last year. He has attempted to enroll in a drug treatment program at the MCC but was refused entry on grounds that the programs were full. He has also been studying for the G.E.D. exam. Additionally, Mr. Briggs has made arrangements to live with his mother following his release from prison (away from the neighborhood he inhabited during the course of the conspiracy) until he is able to afford to live on his own, and he has investigated various employment opportunities and job training programs. As Mr. Briggs explains in his letter to the Court, his 17 months of incarceration at the MCC has given him time to reflect upon the negative consequences that flowed from his poor decision-making, not only to himself, but also to his family and the larger community as well. He recognizes his past mistakes and has made efforts to rehabilitate. He has set goals and taken steps to improve his situation, locate gainful employment and has focused on how "to learn to make better decision[s]." *See* Ex. N (Zoa Briggs Letter).

## III. CONCLUSION

For the reasons set forth above, we respectfully request that the Court impose a non-Guidelines sentence of time served, or, alternatively a non-Guidelines sentence below 37 months.

Respectfully submitted,

PETRILLO KLEIN & BOXER LLP

By: _____
Joshua Klein, Esq.
Robin L. Dull, Esq.

*Counsel for Zoa Briggs*